UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| EDWARD R. WEBB;<br>KENNETH W. LILES;<br>PATRICIA M. LILES;<br>JAMES JOSEPHSON;<br>JERRY A. CICOLANI, JR.;<br>KRIS BRENNEMAN;<br><br><br>Plaintiffs,<br><br>vs.<br><br>DEFENDANTS GINN FINANCIAL<br>SERVICES; BAHAMAS SALES<br>ASSOCIATE, LLC; GINN-LA WEST END<br>LIMITED; THE GINN COMPANIES, LLC;<br>GINN DEVELOPMENT COMPANY, LLC;<br>ROBERT F. MASTERS II; EDWARD R.<br>GINN, III; WILLIAM MCCRACKEN<br><br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1

PLAINTIFFS, for their Complaint herein, allege as follows:

## JURISDICTION

1.  This action is brought by Plaintiffs on their own behalf and on behalf of those similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

2.  This Court has jurisdiction in this action pursuant to 28 U.S.C. §1331 and 18 U.S.C. § 1964(a).  This Court also has jurisdiction over this Class pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

3.  This Court has personal jurisdiction over the Defendants and each of them pursuant to 18 U.S.C. §§ 1965(b) and (d).

## VENUE

4.  Venue for this action is appropriate in this Court under 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b) and (c).  A substantial part of the events or omissions giving rise to the claims herein occurred in this district and division, and several of the Defendants reside and/or transact business in this district and division.

## THE PARTIES

5.  Plaintiff EDWARD R. WEBB ("WEBB") is and, at all times relevant to the allegations herein, was a resident of the State of Georgia who entered into a contract for the purchase of and did purportedly purchase an undeveloped parcel of real property in the VSM Subdivision.

6.  Plaintiffs KENNETH W. LILES and PATRICIA M. LILES ("LILES") are and, at all times relevant to the allegations herein, were residents of the State of Florida who purportedly entered into a contract for the purchase of and did purportedly purchase an undeveloped parcel of

2

real property in the Versailles Sur Mer subdivision on Grand Bahama Island ("VSM" or the "VSM Subdivision").

7.   Plaintiff JAMES JOSEPHSON ("JOSEPHSON") is and, at all times relevant to the allegations herein, was a resident of the State of New York who entered into a contract for the purchase of and did purportedly purchase an undeveloped parcel of real property in the VSM Subdivision.

8.   Plaintiffs JERRY A. CICOLANI, JR. and KRIS BRENNEMAN ("CICOLANI PARTNERSHIP") are and, at all times relevant to the allegations herein, were residents of the State of Ohio who purportedly entered into a contract for the purchase of and did purportedly purchase an undeveloped parcel of real property in the VSM Subdivision.

9.   Upon information and belief, Defendant GINN FINANCIAL SERVICES ("GINN FINANCIAL") is a Georgia limited liability company formed in June, 2005 with its principal place of business at 215 Celebration Place, Suite 200, Celebration, Florida 34747.  The 2006-2008 Florida Annual Reports for Defendant GINN FINANCIAL list Defendant ROBERT F. MASTERS as its Manager.  The 2009 Florida Annual Report for Defendant GINN FINANCIAL lists Defendant EDWARD R. GINN, III as its Manager.

10.  Upon information and belief, Defendant BAHAMAS SALES ASSOCIATE, LLC ("BAHAMAS SALES") is a Delaware corporation formed in August, 2006 with its principal place of business at 215 Celebration Place, Suite 200, Celebration, Florida 34747.  The 2007 and 2008 Florida Annual Reports for Defendant GINN FINANCIAL lists Defendant ROBERT F. MASTERS as its Manager.  The 2009 Florida Annual Report for Defendant GINN FINANCIAL lists Defendant EDWARD R. GINN, III as its Manager.

11.  Upon information and belief, Defendant GINN-LA WEST END, LIMITED ("GINN-LA WEST END") is a foreign corporation with its principal place of business at 215 Celebration Place, Suite 200, Celebration, Florida 34747.  The 2008 Florida Annual Report for Defendant GINN-LA WEST END lists Defendant EDWARD ROBERT GINN, III as its Chairman and Defendant ROBERT F. MASTERS as its President.  The 2009 Florida Annual Report for Defendant GINN-LA WEST END lists Defendant EDWARD ROBERT GINN, III as its President.

12.  Upon information and belief, Defendant THE GINN COMPANIES, LLC ("GINN COMPANIES") is a Delaware limited liability company with its principal place of business located at 215 Celebration Place, Suite 200, Celebration, Florida 34747.  The 2006-2007 Annual Reports for Defendant GINN COMPANIES list Defendant EDWARD ROBERT GINN, III, Dean S. Adler and Ira M. Lubert as its managers.  The 2008 Annual Report for Defendant GINN COMPANIES lists Defendant ROBERT F. MASTERS as its manager.  The 2009 Annual Report for Defendant GINN COMPANIES lists Defendant EDWARD R. GINN, III as its manager.

13.  Upon information and belief, Defendant GINN DEVELOPMENT COMPANY, LLC ("GINN DEVELOPMENT") is a Georgia company with its principal place of business located at 215 Celebration Place, Suite 200, Celebration, Florida 34747.  "The Ginn Company" and "Ginn Clubs & Resorts" are trade names or brand names owned by GINN DEVELOPMENT.  GINN DEVELOPMENT at times operates through its own name and at times as The Ginn Company or as Ginn Clubs & Resorts.   The 2004-2005 Annual Reports for Defendant GINN DEVELOPMENT list Defendant EDWARD ROBERT GINN, Dean S. Adler, Ira M. Lubert, Neil B. Faucett and John G. Morris as its managers.  The 2006-2008 Annual Reports for Defendant GINN COMPANIES list Defendant ROBERT F. MASTERS as its manager.  The

4

2009 Annual Report for Defendant GINN COMPANIES lists Defendant EDWARD R. GINN as its manager.

14. Defendants GINN COMPANIES and GINN DEVELOPMENT also operate through a complicated and extensive web of subsidiaries and affiliated entities, including Defendant GINN-LA WEST END. At all times relevant to the allegations herein, Defendants GINN COMPANIES and GINN DEVELOPMENT controlled and directed the activities of all of their subsidiaries and affiliated entities.

15. Upon information and belief, Defendant ROBERT F. MASTERS II ("MASTERS") resides at 184 Sea Colony Parkway, Saint Augustine, Florida 32080-6765. At all times relevant to the allegations herein, Defendant MASTERS served as the President of Defendant GINN-LA WEST END. In addition, Defendant MASTERS did, at all times relevant to the allegations herein, serve as the Executive Vice President of Defendant GINN DEVELOPMENT.

16. Upon information and belief, Defendant EDWARD R. ("BOBBY") GINN, III ("BOBBY GINN") resides at 42 Island Estates Parkway, Palm Coast, Florida 32137. At all times relevant to the allegations herein, Defendant BOBBY GINN has served as the Chairman of Defendant GINN-LA WEST END and the Chairman and CEO of Defendant GINN DEVELOPMENT.

17. Upon information and belief, Defendant WILLIAM MCCRACKEN ("MCCRACKEN") resides in the State of Florida. Upon further information and belief at all times relevant to the allegations herein, Defendants MCCRACKEN has served as an officer of Defendant GINN FINANCIAL.

18.   Upon information and belief, at all times relevant to the allegations herein, Defendant MASTERS was directly responsible for the management of Defendants GINN FINANCIAL, BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES and GINN DEVELOPMENT.

19.   Upon information and belief, at all times relevant to the allegations herein, Defendant BOBBY GINN was directly responsible for the management of Defendants GINN FINANCIAL, BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES and GINN DEVELOPMENT.

20.   Upon information and belief, at all times relevant to the allegations herein, Defendant MCCRACKEN was directly responsible for the management of Defendant GINN FINANCIAL.

21.   At all times relevant to the allegations herein, Defendant BOBBY GINN was personally and directly involved in the marketing of lots in the VSM Subdivision.   Upon information and belief, at all times relevant to the allegations herein, Defendant BOBBY GINN did use the corporate forms of Defendants GINN FINANCIAL, BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES and GINN DEVELOPMENT, as well as other corporate entities bearing the Ginn name but presently unknown to Plaintiffs, for the purpose of defrauding investors in the VSM Subdivision.

22.   Upon information and belief, at all times relevant to the allegations herein, Defendants GINN FINANCIAL, BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES and GINN DEVELOPMENT  were corporate entities operated by Defendant BOBBY GINN for a fraudulent purpose.   Upon further information and belief, as a result of the actions perpetrated by and through Defendants GINN FINANCIAL, BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES and GINN DEVELOPMENT, Defendant BOBBY GINN engaged in

6

fraud and self-dealing and was unjustly enriched, all to the detriment of investors in the VSM Subdivision.

23. Each Defendant did direct and control the manner in which its agents, servants and employees acted at all times relevant to the allegations herein. All acts or omissions relevant to the allegations herein that were performed by those agents, servants and employees occurred during the course and scope of their agency and employment and are therefore imputed to the controlling Defendant.

24. Each Defendant is sued individually as a primary violator and as an aider and abettor. In acting to aid and abet the commission of the fraud and other wrongful conduct complained of herein, each Defendant acted with an awareness of the fraud and other wrongful conduct. Each Defendant rendered substantial assistance or encouragement to the accomplishment of that fraud and was aware of its overall contribution to the conspiracy, scheme, and common course of wrongful conduct alleged herein:  (a) the generation of false loan applications in order to justify higher sales prices when VSM lot loans were sold on the secondary market to investors in mortgage-backed securities; and (b) the fabrication and use of fraudulently overstated appraisals to justify the financing of VSM lot purchases at inflated prices and the artificial valuation of VSM lots.

25. Each Defendant is joined in this action as a co-conspirator.  Liability arises from the fact that each Defendant entered into an agreement with the other Defendants to commit or to participate in the commission of all or part of the unlawful acts, plans, schemes, transactions and artifices to defraud alleged herein: (a) the generation of false loan applications in order to justify higher sales prices when VSM lot loans were sold on the secondary market to investors in mortgage-backed securities; and (b) the fabrication and use of fraudulently overstated appraisals

to justify the financing of VSM lot purchases at inflated prices and the artificial valuation of VSM lots.

## CLASS ACTION ALLEGATIONS

26.  Plaintiffs bring this action on their own behalf and on behalf of a class of similarly situated persons or entities that made VSM lot purchases.

27.  Excluded from the Class are Defendants, any entity in which any Defendant has a controlling interest; any entity of which any Defendant is a parent or subsidiary; any entity that is a parent or subsidiary of any Defendant; and any entity that is controlled by any Defendant's officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns.

28.  This action is brought and may properly be maintained as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23(a)(1)-(4) and, as appropriate, subparts (b)(1), (b)(2) and/or (b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

29.  Numerosity – Fed.R.Civ.Proc. 23(a)(1).  The Class is so numerous that joinder of all of its members is impracticable.  Plaintiffs are informed and believe that over 200 lots in the VSM Subdivision were sold, although the exact number of persons or entities purchasing VSM lots is presently unknown to Plaintiffs.  Obtaining a meeting of the minds among the hundreds of individuals holding interests in VSM lots would be nearly impossible.  Lot purchasers are located throughout the United States and in several countries abroad.  The identity of Class members may be readily ascertained through business records maintained by Defendants.  Class members may be informed of the pendency of this action by direct mail and published notice.

8

30.  Existence and Predominance of Common Questions of Fact and Law - Fed.R.Civ.Proc.
23(b)(3).  Common questions of fact and law exist as to all members of the Class and
predominate over any questions affecting only individual members of the Class.  Common
factual and legal questions arise from Defendants' common course of conduct with respect to:
(a) the generation of false loan applications in order to justify higher sales prices when VSM lot
loans were sold on the secondary market to investors in mortgage-backed securities; and (b) the
fabrication and use of fraudulently overstated appraisals to justify the financing of VSM lot
purchases at inflated prices and the artificial valuation of VSM lots, which may be determined
without reference to the individual damages incurred by any particular Class member.  The same
legal theories and substantive law will apply to the claims of all Class members.  These common
factual and legal questions include the factual allegations set forth below, and include, but are
not limited to the following:

> a.  Whether Defendants – individually, in conspiracy with each other and in
> conspiracy with others presently unknown to Plaintiffs – engaged in a course of
> conduct designed to create false and artificial valuations for lots within the VSM
> Subdivision;
>
> b.  Whether Defendants – individually, in conspiracy with each other and in
> conspiracy with others presently unknown to Plaintiffs – rejected appraisals for
> VSM lots when those appraisals showed values that were significantly lower than
> the false and artificial valuations created by Defendants for VSM lots.
>
> c.  Whether Defendants – individually, in conspiracy with each other and in
> conspiracy with others presently unknown to Plaintiffs – fired those appraisers
> who refused to provide fraudulently overstated appraisals showing values that

9

were in line with the false and artificial valuations created by Defendants for VSM lots.

d.   Whether Defendants – individually, in conspiracy with each other and in conspiracy with others presently unknown to Plaintiffs – hired only appraisers who would provide fraudulently overstated appraisals showing values that were in line with the false and artificial valuations created by Defendants for VSM lots.

e.   Whether Defendants GINN FINANCIAL and BAHAMAS SALES ASSOCIATE – individually, in conspiracy with each other and in conspiracy with others presently unknown to Plaintiffs – provided mortgage loans for VSM lot purchases, which loans were based on fraudulently overstated appraisals showing values that were in line with the false and artificial valuations created by Defendants for VSM lots.

f.   Whether Defendants – individually, in conspiracy with each other and in conspiracy with others presently unknown to Plaintiffs – concealed the true facts concerning their fraudulent valuation practices and concerning the true value of lots within the VSM Subdivision;

g.   Whether Defendants – individually, in conspiracy with each other and in conspiracy with others presently unknown to Plaintiffs – generated false loan applications in order to justify higher sales prices when VSM lot loans were sold on the secondary market to investors in mortgage-backed securities;

h.   Whether Defendants – individually, in conspiracy with each other and in conspiracy with others presently unknown to Plaintiffs – fraudulently concealed

10

their scheme to generate false loan applications in order to justify higher sales prices when VSM lot loans were sold on the secondary market to investors in mortgage-backed securities;

i.   Whether Defendants' conduct caused damages to Plaintiffs and members of the Class;

j.   Whether mortgages entered into by Plaintiffs and members of the Class should be declared null and void as a consequence of Defendants' fraudulent actions;

k.   Whether Defendants have been unjustly enriched at the expense of Plaintiffs and members of the Class;

l.   Whether the Class is entitled to compensatory damages and, if so, the nature of such damages;

m.   Whether the Class is entitled to restitution and disgorgement of all amounts Defendants obtained through their fraudulent conduct;

n.   Whether Defendants are liable for punitive or exemplary damages and, if so, how much is necessary and appropriate to punish Defendants for their conduct and deter others, and to fulfill the other policies and purposes of punitive and exemplary damages; and

o.   How any and all damages awarded should be equitably allocated among the Class.

31.   Typicality of Claims – Fed.R.Civ.Proc. 23(a)(3).   Plaintiffs' claims are typical of the claims of other members of the Class, all of which arise out of the same misconduct on the part of Defendants.   Defendants' misconduct has affected Plaintiffs and each Class member in

11

substantially the same manner by creating fraudulent and artificially inflated valuations for VSM

lot sales.  Plaintiffs and each Class member have an interest in a lot purchased in the VSM

Subdivision.  Plaintiffs and each Class member purchased and/or financed VSM lots at

artificially and fraudulently inflated prices.  Plaintiffs and each Class member have sustained and

continue to sustain substantial monetary damages and irreparable harm arising from Defendants'

misconduct in that Plaintiffs and each Class member have made substantial payments to

purchase lots in the VSM Subdivision that were fraudulently overvalued by Defendants.

32.  Adequacy of Representation – Fed.R.Civ.Proc. 23(a)(4).  Plaintiffs are adequate

representatives of the Class because they are members of the Class and their interests do not

conflict with the interests of the members of the Class they seek to represent.  Plaintiffs have

retained as counsel a Florida law firm with longstanding experience in complex and class action

litigation.  Plaintiffs intend to prosecute this action vigorously, to conclusion, for the benefit of

the Class.  The interests of the members of the class will be fairly and adequately protected by

Plaintiffs and their counsel.

33.  Superiority – Fed.R.Civ.Proc. 23(b)(3).  A class action is superior to other available

methods for the fair and efficient adjudication of this litigation.  Individual litigation of each

Class member's claim is impracticable.  Individual litigation would increase the delay and

expense to all parties and the court system in resolving the complex legal and factual issues of

the case, and would further present the potential for inconsistent or contradictory rulings and

judgments.  It would be unduly burdensome on the court system if every person or entity with an

interest in a lot purchased in the VSM Subdivision filed and prosecuted a separate action.  By

contrast, the class action devise presents far fewer management difficulties than multiple

lawsuits, and provides the benefit of single adjudication, economies of scale, coordinated discovery and trial and comprehensive supervision by a single court.

34. Class Certification under Fed.R.Civ.Proc. 23(b)(1). The various claims asserted in this action are additionally or alternatively certifiable under the provisions of Fed.R.Civ.Proc. 23(b)(1). The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, thus establishing incompatible standards of conduct for Defendants. This risk is enhanced in that Defendants' conduct is ongoing. Accordingly, individual actions would not settle the issue of whether Defendants' conduct "going forward" is lawful or not. Moreover, the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudication, or would substantially impair or impede the ability of such non-party Class members to protect their interests.

35. Class Certification under Fed.R.Civ.Proc. 23(b)(2). The various claims asserted in this action are additionally or alternatively certifiable under the provisions of Fed.R.Civ.Proc. 23(b)(2) because Defendants have acted, or have refused to act, on grounds generally applicable to the Class, thereby making injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole. The Complaint seeks final injunctive and declaratory relief.

## GENERAL FACTS

36. Upon information and belief, at all times relevant to the allegations herein, Defendant GINN-LA WEST END was engaged in the development and the sale of lots in the VSM Subdivision.

13

37. Upon information and belief, Defendant GINN-LA WEST END did enter into contracts for the sales of lots in the VSM Subdivision at least as early as 2005 (the "Initial VSM Lot Contracts").

38. Upon information and belief, at the time when Defendant GINN-LA WEST END did enter into the Initial VSM Lot Contracts, the prospective purchasers under those contracts were advised that if they were interested in obtaining financing for their lot purchases, they should seek financing from certain Bahamian banks recommended by Defendant GINN-LA WEST END, or from any U.S. financial institutions that might be willing to offer financing on a lot purchase in the Bahamas.

39. Upon information and belief, the prospective purchasers under the Initial VSM Lot Contracts were unable to obtaining financing for their lot purchases from U.S. financial institutions.

40. Upon information and belief, the prospective purchasers under the Initial VSM Lot Contracts were unable to obtaining financing for their lot purchases from Bahamian banks unless those purchasers were willing and able to make a 50% deposit on their lot purchases.

41. Upon information and belief, one or more of the prospective purchasers under the Initial VSM Lot Contracts did inform Defendant GINN-LA WEST END that they would be unable to close on their VSM lot purchases unless they could obtain 80% loan-to-value financing on their lot purchases. Upon further information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did recognize that unless they were able to provide prospective purchasers with 80% loan-to-value financing for VSM lot purchases, many prospective purchasers would not be able to close on their VSM lot purchases.

14

42. Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did enter into an agreement to create Defendant GINN FINANCIAL in order to provide 80% loan-to-value financing for VSM lot purchases. Upon further information and belief, Defendant GINN FINANCIAL was formed in June, 2005 did become a licensed mortgage lender in the State of Florida on October 4, 2005.

43. Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did take the necessary steps to allow Defendant GINN FINANCIAL and/or Defendant BAHAMAS SALES to offer 80% loan-to-value financing for VSM lot purchases.

44. Upon further information and belief, in order to be able to offer lot loans in the Bahamas, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did enter into an agreement with Credit Suisse or some other source, whereby Credit Suisse or some other source would provide the end-funding for lot loans in the VSM Subdivision that were processed, underwritten and closed by Defendant GINN FINANCIAL and/or Defendant BAHAMAS SALES.

45. Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did recommend to prospective purchasers in the VSM Subdivision that those purchasers could obtain 80% loan-to-value financing for VSM lot purchases through Defendant GINN FINANCIAL and/or Defendant BAHAMAS SALES. Upon further

15

information and belief, Defendant GINN FINANCIAL did allow its name to be used in marketing communications for the VSM Subdivision as a primary source of financing for VSM lot purchases.

46. The website for the VSM Subdivision did state that Defendant GINN FINANCIAL was "a licensed mortgage lender in the State of Florida; License # L100000558788." Upon information and belief, this representation was false in that the license number listed on the VSM Subdivision website does not match the license number issued to Defendant GINN FINANCIAL by the State of Florida.

47. Defendant GINN FINANCIAL did provide financing to certain VSM lot purchasers.

48. Upon information and belief, Defendant BAHAMAS SALES ASSOCIATE did also provide financing to certain VSM lot purchasers. Plaintiffs have been unable to locate any record establishing that Defendant BAHAMAS SALES ASSOCIATE was a licensed mortgage lender.

49. In the course of accepting, underwriting, approving and issuing financing for VSM lot purchases, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN had a duty to ensure that the appropriate loan type was applied for; that the amount of the loan was within an acceptable level of risk to the loan applicant and to potential investors in the mortgage-backed security (MBS) on the secondary market; and that both the application process and the loan met the standards set by applicable state and federal laws.

## Scheme to Generate False Loan Applications

50.   Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did cause to be generated false loan applications indicating that loans for VSM lot purchases were being made for second home purchases rather than lot purchases in order to justify higher sales prices when VSM lot loans were sold on the secondary market to investors in mortgage-backed securities.

51. Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did ensure that VSM lot loans were approved and money disbursed at the closing of VSM lot sales, notwithstanding their knowledge of the use of false loan applications indicating that loans for VSM lot purchases were being made for second home purchases rather than lot purchases.

52.   Representations in loan applications that the VSM lot loans were instead loans for second home purchases rather than lot purchases was inaccurate information that was or should have been material to the decision whether to approve the VSM lot loans.

53.   One or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did receive a direct benefit from their scheme to generate false loan applications in order to justify higher sales prices when VSM lot loans were sold on the secondary market to investors in mortgage-backed securities.

54.   Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did fraudulently conceal their scheme to generate false loan applications in order to justify higher sales prices when VSM lot loans were sold on the secondary market to investors in mortgage-backed securities.

### Scheme to Create False and Artificial Appraised Values for VSM Lots

55.   Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did engage in the fabrication and use of fraudulently overstated appraisals to justify the financing of VSM lot purchases at inflated prices and the artificial valuation of VSM lots.

56.   Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did establish sales prices for VSM lots, which sales prices were substantially higher than the appraised value of those lots.

57.   Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did offer substantial incentives to buyers who purchased VSM lots for cash.  Upon further information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did manipulate the closing dates for VSM lot purchases so that closings on cash sales would occur before closings for financed sales.

58.  Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did attempt to persuade appraisers that the sales prices for VSM lots, as evidenced by pending sales contracts or HUD statements from the closings on cash sales, should be the only factors considered in order to establish the appraised value of VSM lots.

59.  Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did attempt to persuade appraisers that the sales prices for comparable lots outside of the VSM Subdivision should not be considered in order to establish the appraised value of VSM lots.

60.  Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did reject appraisals for VSM lots when those appraisals showed values that were significantly lower than sales prices that those Defendants had established for the VSM lots.

61.  Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did reject any appraisals for VSM lots that took into consideration the sales prices for comparable lots located in the Bahamas but outside of the VSM Subdivision.

62.  Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did refuse to work with any appraisers who refused to use the sales prices for VSM lots, as evidenced by pending sales contracts or HUD statements from the

closings on cash sales, as the only factors to be considered in order to establish the appraised value of VSM lots.

63. Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did refuse to work with any appraisers who considered the sales prices for comparable lots located in the Bahamas but outside of the VSM Subdivision in order to establish the appraised value of VSM lots.

64. Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did only hire appraisers who agreed to use the sales prices for VSM lots, as evidenced by pending sales contracts or HUD statements from the closings on cash sales, as the only factors to be considered in order to establish the appraised value of VSM lots.

65. Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did only hire appraisers who agreed not to consider the sales prices for comparable lots located in the Bahamas but outside of the VSM Subdivision in order to establish the appraised value of VSM lots.

66. Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did utilize the fraudulently overstated appraisals to justify the sale and financing of VSM lot purchases at inflated prices.

67. Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did ensure that VSM lot loans were approved and money disbursed at the closing of VSM lot sales, notwithstanding their knowledge of the use of fraudulently overstated appraisals to justify the inflated amounts of the VSM lot loans.

68. Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did fraudulently conceal their scheme to utilize fraudulently overstated appraisals to justify the sale and financing of VSM lot purchases at inflated prices.

69. The appraised value of the VSM lots, as set forth in the fraudulently overstated appraisals, was material to the decision of Plaintiffs and Class members whether to purchase VSM lots and how much to pay for the VSM lots they purchased.

70. The appraised value of the VSM lots, as set forth in the fraudulently overstated appraisals, was or should have been material to the underwriting decision whether to approve the VSM lot loans.

71. Upon information and belief, one or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did conceal the true facts concerning their fraudulent valuation practices and concerning the true value of lots within the VSM Subdivision.

72. One or more of Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did

21

receive a direct benefit from the false and inflated valuation of VSM lots and from the issuance of VSM lot financing based on fraudulently overstated appraisals.

73.  But for the fraudulent scheme perpetrated by Defendants, Plaintiffs would not have purchased VSM lots or would not have purchased VSM lots at the fraudulently inflated prices.

74.  But for the fraudulent scheme perpetrated by Defendants, the VSM lot loans should not have been approved for the fraudulently inflated sales prices of the VSM lots.

## RICO Allegations

### The Ginn Enterprise

75.  Plaintiffs, members of the Class and Defendants are all "persons" within the meaning of 18 U.S.C. § 1961(3).

76.  Based upon Plaintiffs' current knowledge, the following persons constitute a group of individuals associated in fact that Plaintiffs refer to as the "Ginn Financial Enterprise": (1) Defendant BAHAMAS SALES; (2) Defendant GINN-LA WEST END; (3) Defendant THE GINN COMPANIES; (4) Defendant GINN DEVELOPMENT; (5) Defendant MASTERS; (5) Defendant BOBBY GINN; (6) Defendant MCCRACKEN and (7) other subsidiaries, agents and affiliated persons or entities of Defendants not named as Defendants.

77.  The Ginn Financial Enterprise is an ongoing organization that engages in, and which activities affect, interstate and foreign commerce.  At all time relevant to the allegations herein, Defendants BAHAMAS SALES; GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN and MCCRACKEN did knowingly and willfully make use of the means and instruments of transportation and communications of interstate and

foreign commerce to communicate with prospective purchasers of lots in the VSM Subdivision and with applicants for VSM lot financing.

78.   Although Defendants participate in and are members and part of the Ginn Financial Enterprise, each Defendant also has an existence separate and apart from the Ginn Financial Enterprise.

79.   At all relevant times, the Ginn Financial Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which Defendants have engaged and their conspiracy to engage in such activity.  The primary decision-maker for the Ginn Financial Enterprise was and is Defendant BOBBY GINN, who directed and continues to direct the activities of the Ginn Financial Enterprise.

80.   Defendants control and operate the Ginn Enterprise through a variety of means including, but not limited to, the following:

> a.   By investing funds to develop the VSM Subdivision;
>
> b.   By agreeing to create and creating Defendants GINN FINANCIAL and BAHAMAS SALES ASSOCIATE in order to offer prospective purchasers VSM lot loans;
>
> c.   By agreeing to generate and generating false loan applications;
>
> d.   By agreeing to set and setting artificially high sales prices for VSM lots;
>
> e.   By agreeing to generate and generating fraudulently overstated appraisals intended to support VSM lot loans issued by Defendants GINN FINANCIAL and/or BAHAMAS SALES ASSOCIATE;

f.  By agreeing to facilitate and facilitating the approval and closing of VSM lot loans at amounts that are based upon the fraudulently overstated appraised value of VSM lots;

g.  By agreeing to conceal and concealing their fraudulent scheme to generate false loan applications in order to sell VSM lot loans as mortgage-backed securities;

h.  By agreeing to conceal and concealing their fraudulent scheme to set artificially high sales prices for VSM lots;

i.  By agreeing to conceal and concealing their fraudulent scheme to facilitate the approval and closing of VSM lot loans at amounts that are based upon the fraudulently overstated appraised value of VSM lots; and

j.  By agreeing to conceal and concealing their fraudulent scheme to generate fraudulently overstated appraisals intended to support VSM lot loans issued by Defendants GINN FINANCIAL and/or BAHAMAS SALES ASSOCIATE.

81.  The Ginn Financial Enterprise has pursued a course of deceit, misrepresentation, concealment and conspiracy to defraud VSM lot purchasers and to collect profits from the fraudulent, misleading and unlawful actions of the Ginn Financial Enterprise.  Those actions continue to the present and threaten to continue into the future.

82.  The formation, existence and actions of the Ginn Financial Enterprise were and are essential to the success of its fraudulent, misleading and unlawful actions.

## Predicate Acts

## Mail and Wire Fraud

83.   Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud).   Defendants have engaged and continue to engage in conduct violating each of these laws in an effort to effectuate their scheme.

84.   For the purpose of executing and/or attempting to execute the above-described scheme to defraud or obtain money by means of false or fraudulent pretenses, representations or promises, Defendants in violation of 18 U.S.C. § 1341 did cause matter and things to be delivered by the Postal Service or by private or commercial interstate carriers.   These acts were done intentionally and knowingly with the specific intent to advance Defendants' schemes, or with knowledge that the use of mails would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended.

85.   Defendants carried out their scheme in different states within the United States and in other countries and could not have done so unless they used the Postal Service or private or commercial interstate carriers.

86.   For the purpose of executing and/or attempting to execute the above-described scheme to defraud or obtain money by means of false or fraudulent pretenses, representations or promises, Defendants in violation of 18 U.S.C. § 1343 did transmit, cause to be transmitted and/or received by means of wire communication in interstate and foreign commerce, various writings, signs, and signals.   These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme, or with knowledge that the use of wire communications

would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended.

87.   The matter and things sent by Defendants via the Postal Service or private or commercial carrier, wire or other interstate media include, but are not limited to, the following:

      a.   Correspondence conveying loan applications generated by Defendants;

      b.   Correspondence conveying financing documents representing that the financing for VSM lots was supported by an appraisal;

      c.   Correspondence and financing documents that failed to disclose Defendants' scheme to generate false loan applications in order to sell VSM lot loans as mortgage-backed securities;

      d.   Correspondence and financing documents that failed to disclose Defendants' scheme to set artificially high sales prices for VSM lots; and

      e.   Correspondence and financing documents that failed to disclose Defendants' scheme to generate fraudulently overstated appraisals intended to support VSM lot loans issued by Defendants GINN FINANCIAL and BAHAMAS SALES ASSOCIATE.

88.   Other matters and things sent through or received from the Postal Service and private or commercial carrier or interstate wire transmission by Defendants included information or communication in furtherance of or necessary to effectuate the schemes outlined above.

89.   Defendants' misrepresentations, acts of concealment and failures to disclose were knowing and intentional and made for the purpose of deceiving Plaintiffs and the Class and obtaining their money and property for Defendants' gain.

90. Defendants either knew or recklessly disregarded the fact that the misrepresentations and omissions described above were material, and Plaintiff sand the Class relied on the misrepresentations and omissions set forth above.

91. As a result of Defendants' fraudulent schemes, Defendants have obtained money and property belonging to Plaintiffs and Class members, and Plaintiffs and Class members have been injured in their business or property by the Defendants' overt acts of mail and wire fraud.

### Pattern of Racketeering Activity

92. Defendants did knowingly, willfully and unlawfully conduct or participate in the affairs of the Ginn Financial Enterprise through a "pattern of racketeering activity," within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c). The racketeering activity was made possible by the Defendants' regular and repeated use of the facilities and services of the Ginn Financial Enterprise.

93. Defendants committed or aided and abetted in the commission of at least two acts of racketeering activity, *i.e.,* indictable violations of 18 U.S.C. §§1341 and 1343 as described above, within the past five years. Defendants' acts of racketeering were not isolated, but rather had the same or similar purpose, participants, method of commission, and victims, including Plaintiffs and Class members.

94. The multiple acts of racketeering activity that Defendants committed and/or conspired to commit and/or aided and abetted the commission of, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

## COUNT I

### Violation of 18 U.S.C. § 1962(c):  RICO

95.  Plaintiffs re-allege the allegations set forth in paragraphs 1- 94 as though fully set forth below.

96.  Defendants violated 18 U.S.C. §§ 1962(c) by conducting, or participating directly or indirectly in the conduct of the affairs of the Ginn Financial Enterprise through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §§1341 and 1343.

97.  As a direct and proximate result, Plaintiffs and members of the Class have been injured in their business or property by the predicate acts that make up Defendants' pattern of racketeering activity through the Ginn Financial Enterprise.

## COUNT II

### Violation of 18 U.S.C. § 1962(d):  RICO

98.  Plaintiffs re-allege the allegations set forth in paragraphs 1- 97 as though fully set forth below.

99.  In violation of 18 U.S.C. §§ 1962(d) Defendants have, as set forth above, conspired to violate 18 U.S.C. §§ 1962(c).  The conspiracy commenced at least as early as 2004 and continues.  The object of the conspiracy was to sell and finance VSM lots at inflated prices resulting in increased profits for Defendants.

100.      As set forth above, each Defendant knowingly, willfully and unlawfully agreed and combined to conduct or participate in, directly or indirectly, the conduct of the affairs and activities of the Ginn Financial Enterprise through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §§1341 and 1343, in violation of 18 U.S.C. §§ 1962(c).

101.    Defendants committed numerous overt acts of racketeering activity or other wrongful activity in furtherance of said conspiracy.

102.    The purpose of the acts that caused injury to Plaintiffs and Class members was to advance the overall objective of the conspiracy, and the harm to Plaintiffs and Class members was a reasonably foreseeable consequence of Defendants' schemes.

103.    As a direct and proximate result, Plaintiffs and Class members have been injured in their business or property by Defendants' conspiracy and by the predicate acts that make up the Defendants' pattern of racketeering activity through the Ginn Financial Enterprise.

## COUNT III

### Unjust Enrichment

104.    Plaintiffs re-allege the allegations set forth in paragraphs 1- 103 as though fully set forth below.

105.    As a result of their schemes as alleged herein, Defendants sold and/or financed VSM lots to Plaintiffs and Class members at inflated prices and benefitted thereby through the receipt of money and fees that were artificially inflated.

106.    Defendants are aware of their receipt of these benefits.

107.    Defendants received these benefits to the detriment of Plaintiffs and Class members.

108.    Defendants' continuing retention of these benefits, to the detriment of Plaintiffs and Class members, is inequitable.

109.    By virtue of Defendants' unjust enrichment, Plaintiffs and Class members have sustained damages in an amount to be determined at trial.

110.    Plaintiffs and Class members hereby seek full restitution and disgorgement of Defendants' inequitable enrichment, benefits and ill-gotten gains acquired as a result of the wrongful conduct set forth above.

111.    Plaintiffs and Class members further seek restitution and disgorgement of all profits realized by Defendants as a result of the wrongful conduct set forth above.

## PRAYER FOR RELIEF

Plaintiffs and Class members hereby pray for the following relief:

A.  A determination that this case may proceed as a class action , certification of the Class of all purchasers of lots within the VSM Subdivision, certification of Plaintiffs as Class representatives and designation of Plaintiffs' counsel as Class counsel under Fed.R.Civ.Proc. 23;

B.  A determination that Defendants have violated 18 U.S.C. §§ 1962(c) and (d);

C.  An injunction prohibiting Defendants from further violations of 18 U.S.C. §§ 1962(c) and (d);

D.  A determination that the mortgages entered into by Plaintiffs and members of the Class should be declared null and void as a consequence of Defendants' fraudulent actions

E.  As to all Counts, an order that Defendants pay damages in an amount to be determined at trial;

F.  As to Counts I and II, an order that Defendants pay treble the amount of damages suffered by Plaintiffs and Class members;

G.  A determination that Defendants have been unjustly enriched at the expense of Plaintiffs and the Class members;

H.  An order of restitution of all payments and charges that Defendants improperly collected from Plaintiffs and the Class members;

I.  The imposition of a constructive trust over the amount of all payments and charges that Defendants improperly collected from Plaintiffs and the Class members;

J.  A determination that Defendants are jointly and severally liable as to all Counts herein;

K.  An award to Plaintiffs and Class members of the costs and disbursements incurred in connection with this action, including reasonable attorneys' fees and the reimbursement of expenses in amounts to be determined by the Court;

L.  An award to Plaintiffs and Class members of prejudgment interest;

M.  Trial by jury of all issues triable as of right by a jury; and

N.  Such other and further relief as the Court may deem just and proper.


June 8, 2009

Dana L. Ballinger – Trial Counsel
Attorney for Plaintiffs
Florida Bar No. 35278
BALLINGER LAW OFFICE
747 Windlass Way
Sanibel, Florida 33957
(239) 395-7672
dballinger@ballingerlawoffice.com