# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF FLORIDA

EDWARD R. WEBB; KENNETH
W. LILES; PATRICIA M. LILES;
JAMES JOSEPHSON;

                           Plaintiffs,                Case No. 3: 09-cv-00516-MMH-JRK

vs.

DEFENDANTS GINN FINANCIAL
SERVICES; BAHAMAS SALES
ASSOCIATE, LLC; GINN-LA WEST END
LIMITED; THE GINN COMPANIES, LLC;
GINN DEVELOPMENT COMPANY, LLC;
ROBERT F. MASTERS II; EDWARD R.
GINN, III; WILLIAM MCCRACKEN;
MARK E. COOK; JOHN DOES 1-15,

                           Defendants.
_____/

## FIRST AMENDED CLASS ACTION COMPLAINT

## AND DEMAND FOR JURY TRIAL

PLAINTIFFS, for their Complaint herein, allege as follows:

## JURISDICTION

1.   This action is brought by Plaintiffs on their own behalf and on behalf of those similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

2.   This Court has jurisdiction in this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a).  This Court also has jurisdiction over this Class pursuant to the Class Action Fairness Act, 28 U.S.C. § 13342(d).

3.   This Court has personal jurisdiction over the Defendants and each of them pursuant to 18 U.S.C. §§ 1965(b) and (d).

## VENUE

4.   Venue for this action is appropriate in this Court under 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b) and (c).  A substantial part of the events or omissions giving rise to the claims herein occurred in this district and division, and several of the Defendants reside and/or transact business in this district and division.

## THE PARTIES

5.   Plaintiff EDWARD R. WEBB ("WEBB") is and, at all times relevant to the allegations herein, was a resident of the State of Georgia who entered into a contract for the purchase of and did purportedly purchase an undeveloped parcel of real property in the Versailles Sur Mer subdivision on Grand Bahama Island ("VSM" or the "VSM Subdivision"), which was alternatively marketed as Ginn Sur Mer.

6.   Plaintiffs KENNETH W. LILES and PATRICIA M. LILES ("LILES") are and, at all times relevant to the allegations herein, were residents of the State of Florida who purportedly

entered into a contract for the purchase of and did purportedly purchase an undeveloped parcel of real property in the VSM Subdivision.

7.  Plaintiff JAMES JOSEPHSON ("JOSEPHSON") is and, at all times relevant to the allegations herein, was a resident of the State of New York who entered into a contract for the purchase of and did purportedly purchase an undeveloped parcel of real property in the VSM Subdivision.

8.  Upon information and belief, Defendant GINN FINANCIAL SERVICES ("GINN FINANCIAL") is a Georgia Limited Liability Company formed in June, 2005 with its principal place of business at 215 Celebration Place, Suite 200, Celebration, Florida 34747.  The 2006-2008 Florida Annual Reports for Defendant GINN FINANCIAL list Defendant ROBERT F. MASTERS as its Manager.  The 2009 Florida Annual Report for Defendant GINN FINANCIAL lists Defendant EDWARD R. GINN, III as its Manager.

9.  Upon information and belief, Defendant BAHAMAS SALES ASSOCIATE, LLC ("BAHAMA SALES") is a Delaware corporation formed in August, 2006 with its principal place of business at 215 Celebration Place, Suite 200, Celebration, Florida 34747.  The 2007 and 2008 Florida Annual Reports for Defendant BAHAMA SALES lists Defendant ROBERT F. MASTERS as its Manager.  The 2009 Florida Annual Report for Defendant BAHAMA SALES lists Defendant EDWARD R. GINN, III as its Manager.

10.  Upon information and belief, Defendant GINN-LA WEST END, LIMITED ("GINN-LA WEST END") is a foreign corporation with its principal place of business at 215 Celebration Place, Suite 200, Celebration, Florida 34747.  The 2008 Florida Annual Report for Defendant GINN-LA WEST END lists Defendant EDWARD ROBERT GINN, III as its Chairman and Defendant ROBERT F. MASTERS as its President.  The 2009 Florida Annual Report for

3

Defendant GINN-LA WEST END lists Defendant EDWARD ROBERT GINN, III as its President.

11.   Upon information and belief, Defendant THE GINN COMPANIES, LLC ("GINN COMPANIES") is a Delaware limited liability company with its principal place of business located at 215 Celebration Place, Suite 200, Celebration, Florida 34747.  The 2006-2007 Annual Reports for Defendant GINN COMPANIES list Defendant EDWARD ROBERT GINN, III, Dean S. Adler and Ira M. Lubert as its managers.  The 2008 Annual Report for Defendant GINN COMPANIES lists Defendant ROBERT F. MASTERS as its manager.  The 2009 Annual Report for Defendant GINN COMPANIES lists Defendant EDWARD R. GINN, III as its manager.

12.   Upon information and belief, Defendant GINN DEVELOPMENT COMPANY, LLC ("GINN DEVELOPMENT") is a Georgia company with its principal place of business located at 215 Celebration Place, Suite 200, Celebration, Florida 34747.  "The Ginn Company" and "Ginn Clubs & Resorts" are trade names or brand names owned by Defendant GINN DEVELOPMENT. Defendant GINN DEVELOPMENT at times operates through its own name and at times as The Ginn Company or as Ginn Clubs & Resorts.  The 2004-2005 Annual Reports for Defendant GINN DEVELOPMENT list Defendant EDWARD ROBERT GINN III,  Dean S. Adler, Ira M. Lubert, Neil B. Faucett and John G. Morris as its managers.  The 2006-2008 Annual Reports for Defendant GINN DEVELOPMENT list Defendant ROBERT F. MASTERS as its manager. The 2009 Annual Report for Defendant GINN DEVELOPMENT lists Defendant EDWARD R. GINN III as its manager.

13.   Defendants GINN COMPANIES and GINN DEVELOPMENT also operate through a complicated and extensive web of subsidiaries and affiliated entities, including Defendant GINN-LA WEST END. At all times relevant to the allegations herein, Defendants GINN

COMPANIES and GINN DEVELOPMENT controlled and directed the activities of all of their subsidiaries and affiliated entities.

14.   Upon information and belief, Defendant ROBERT F. MASTERS II ("MASTERS") resides at 184 Sea Colony Parkway, Saint Augustine, Florida 32080-6765.  At all times relevant to the allegations herein, Defendant MASTERS served as the President of Defendant GINN-LA WEST END.  In addition, Defendant MASTERS did, at all times relevant to the allegations herein, serve as the Executive Vice President of Defendant GINN DEVELOPMENT.

15.   Upon information and belief, Defendant EDWARD R. ("BOBBY") GINN, III ("BOBBY GINN") resides at 42 Island Estates Parkway, Palm Coast, Florida 32137.  At all times relevant to the allegations herein, Defendant BOBBY GINN has served as the Chairman of Defendant GINN-LA WEST END and the Chairman and CEO of Defendant GINN DEVELOPMENT.

16.   Upon information and belief, Defendant WILLIAM MCCRACKEN ("MCCRACKEN") resides in the State of Florida.  Upon further information and belief at all times relevant to the allegations herein, Defendant MCCRACKEN has served as an officer of Defendant GINN FINANCIAL.

17.   Upon information and belief, Defendant MARK E. COOK ("COOK") resides in the State of Florida.  Upon further information and belief, at all times relevant to the allegations herein, Defendant COOK has served as an officer of Defendant GINN FINANCIAL.

18.   Upon information and belief, Defendants JOHN DOES 1-15 reside in the State of Florida.  Defendants JOHN DOES 1-15 are presently unidentified appraisal companies and/or appraisers, whose names are presently unknown to Plaintiffs.  The only way for Plaintiffs to

5

identify the names of Defendants JOHN DOES 1-15 is through discovery.  As soon as Plaintiffs identify the names of Defendants JOHN DOES 1-15, this First Amended Complaint will be amended to substitute Defendants who are real parties in interest.

19.   Upon further information and belief, at all times relevant to the allegations herein, Defendants JOHN DOES 1-15 did knowingly and willingly participate in the racketeering activity described herein by agreeing to fabricate and fabricating fraudulently overstated appraisals for VSM lots.

20.   Upon information and belief, at all times relevant to the allegations herein, Defendant MASTERS was directly responsible for the management of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES and GINN DEVELOPMENT.

21.   Upon information and belief, at all times relevant to the allegations herein, Defendant BOBBY GINN was directly responsible for the management of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES and GINN DEVELOPMENT.

22.   Upon information and belief, at all times relevant to the allegations herein, Defendants MCCRACKEN and COOK were directly responsible for the management of Defendant GINN FINANCIAL.

23.   Upon information and belief, at all times relevant to the allegations herein, Defendant BOBBY GINN was personally and directly involved in the marketing and financing of lots in the VSM Subdivision.  Upon information and belief, at all times relevant to the allegations herein, Defendant BOBBY GINN did use the corporate forms of Defendants

6

GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES and GINN DEVELOPMENT, as well as other corporate entities bearing the Ginn name but presently unknown to Plaintiffs, for the purpose of defrauding investors in the VSM Subdivision.

24.   Upon information and belief, at all times relevant to the allegations herein, Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES and GINN DEVELOPMENT were corporate entities operated by Defendant BOBBY GINN for a fraudulent purpose.  Upon further information and belief, as a result of the actions perpetrated by and through Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES and GINN DEVELOPMENT, Defendant BOBBY GINN engaged in fraud and self-dealing and was unjustly enriched, all to the detriment of investors in the VSM Subdivision.

25.   Each Defendant did direct and control the manner in which its agents, servants and employees acted at all times relevant to the allegations herein.  All acts or omissions relevant to the allegations herein that were performed by those agents, servants and employees occurred during the course and scope of their agency and employment and are therefore imputed to the controlling Defendant.

26.   Each Defendant is sued individually as a primary violator and as an aider and abettor. In acting to aid and abet the commission of the fraud and other wrongful conduct complained of herein, each Defendant acted with an awareness of the fraud and other wrongful conduct.  Each Defendant rendered substantial assistance or encouragement to the accomplishment of that fraud and was aware of its overall contribution to the conspiracy, scheme, and common course of wrongful conduct alleged herein:  (a) the generation of false loan applications in order to justify higher sales prices when VSM lot loans were sold on the secondary market to investors in

mortgage-backed securities; and (b) the fabrication and use of fraudulently overstated

appraisals to justify the financing of VSM lot purchases at inflated prices and the artificial

valuation of VSM lots.

27.   Each Defendant is joined in this action as a co-conspirator.  Liability arises from the fact

that each Defendant entered into an agreement with the other Defendants to commit or to

participate in the commission of all or part of the unlawful acts, plans, schemes, transactions and

artifices to defraud alleged herein: (a) the generation of false loan applications in order to justify

higher sales prices when VSM lot loans were sold on the secondary market to investors in

mortgage-backed securities; and (b) the fabrication and use of fraudulently overstated appraisals

to justify the financing of VSM lot purchases at inflated prices and the artificial valuation

of VSM lots.

## CLASS ACTION ALLEGATIONS

29.   Plaintiffs bring this action on their own behalf and on behalf of a class of similarly

situated persons or entities that made VSM lot purchases.

30.   Excluded from the Class are Defendants, any entity in which any Defendant has a

controlling interest; any entity of which any Defendant is a parent or subsidiary; any entity

that is a parent or subsidiary of any Defendant; and any entity that is controlled by any

Defendant's officers, directors, employees, affiliates, legal representatives, heirs,

predecessors, successors and assigns.

31.  This action is brought and may properly be maintained as a class action pursuant to the

provisions of Federal Rule of Civil Procedure 23(a)(1)-(4) and, as appropriate, subparts

(b)(1), (b)(2) and/or (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

32. <u>Numerosity – Fed.R.Civ.P. 23(a)(1)</u>. The Class is so numerous that joinder of all of its members is impracticable. Plaintiffs are informed and believe that over 200 lots in the VSM Subdivision were sold, although the exact number of persons or entities purchasing VSM lots is presently unknown to Plaintiffs. Obtaining a meeting of the minds among the hundreds of individuals holding interests in VSM lots would be nearly impossible. Lot purchasers are located throughout the United States and in several countries abroad. The identity of Class members may be readily ascertained through business records maintained by Defendants. Class members may be informed of the pendency of this action by direct mail and published notice.

33. <u>Existence and Predominance of Common Questions of Fact and Law - Fed.R.Civ.P. 23(b)(3)</u>. Common questions of fact and law exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. Common factual and legal questions arise from Defendants' common course of conduct with respect to: (a) the generation of false loan applications in order to justify higher sales prices when VSM lot loans were sold on the secondary market to investors in mortgage-backed securities; and (b) the fabrication and use of fraudulently overstated appraisals to justify the financing of VSM lot purchases at inflated prices and the artificial valuation of VSM lots, which may be determined without reference to the individual damages incurred by any particular Class member. The same legal theories and substantive law will apply to the claims of all Class members. These common factual and legal questions include the factual allegations set forth below, and include, but are not limited to the following:

a.  Whether Defendants – individually, in conspiracy with each other and in conspiracy with others presently unknown to Plaintiffs – engaged in a course of conduct designed to create false and artificial valuations for lots within the VSM Subdivision.

b.  Whether Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK – individually, in conspiracy with each other and in conspiracy with others presently unknown to Plaintiffs – rejected appraisals for VSM lots when those appraisals showed values that were significantly lower than the false and artificial valuations created by Defendants for VSM lots.

c.  Whether Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK –  individually, in conspiracy with each other and in conspiracy with others presently unknown to Plaintiffs – fired those appraisers who refused to provide fraudulently overstated appraisals showing values that were in line with the false and artificial valuations created by Defendants for VSM lots.

d.  Whether Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK – individually, in conspiracy with each other and in conspiracy with others presently unknown to Plaintiffs – hired only appraisers who would provide fraudulently overstated appraisals showing values

that were in line with the false and artificial valuations created by Defendants for VSM lots.

e.   Whether Defendants JOHN DOES 1-15 did provide fraudulently overstated appraisals showing values that were in line with the false and artificial valuations created by Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK for VSM lots.

f.   Whether Defendants GINN FINANCIAL and/or BAHAMAS SALES ASSOCIATE – individually, in conspiracy with each other and in conspiracy with others presently unknown to Plaintiffs – provided mortgage loans for VSM lot purchases, which loans were based on fraudulently overstated appraisals showing values that were in line with the false and artificial valuations created by Defendants for VSM lots.

g.   Whether Defendants – individually, in conspiracy with each other and in conspiracy with others presently unknown to Plaintiffs – concealed the true facts concerning their fraudulent valuation practices and concerning the true value of lots within the VSM Subdivision.

h.   Whether Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK – individually, in conspiracy with each other and in conspiracy with others presently unknown to Plaintiffs – generated false loan applications in order to justify higher sales prices when VSM lot loans were sold on the secondary market to investors in mortgage-backed securities.

i.   Whether Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK – individually, in conspiracy with each other and in conspiracy with others presently unknown to Plaintiffs – fraudulently concealed their scheme to generate false loan applications in order to justify higher sales prices when VSM lot loans were sold on the secondary market to investors in mortgage-backed securities.

j.   Whether Defendants' conduct caused damages to Plaintiffs and members of the Class.

k.   Whether mortgages entered into by Plaintiffs and members of the Class should be declared null and void as a consequence of Defendants' fraudulent and illegal actions.

l.   Whether Defendants have been unjustly enriched at the expense of Plaintiffs and members of the Class.

m.   Whether the Class is entitled to compensatory damages and, if so, the nature of such damages.

n.   Whether the Class is entitled to restitution and disgorgement of all amounts Defendants obtained through their fraudulent conduct.

o.   Whether Defendants are liable for punitive or exemplary damages and, if so, how much is necessary and appropriate to punish Defendants for their conduct , to deter others, and to fulfill the other policies and purposes of punitive and exemplary damages.

p.   How any and all damages awarded should be equitably allocated among the Class.

34.   <u>Typicality of Claims — Fed.R.Civ.P. 23(a)(3)</u>.  Plaintiffs' claims are typical of the claims of other members of the Class, all of which arise out of the same misconduct on the part of Defendants.  Defendants' misconduct has affected Plaintiffs and each Class member in substantially the same manner by creating fraudulent and artificially inflated valuations for VSM lot sales.  Plaintiffs and each Class member purchased and/or financed VSM lots at artificially and fraudulently inflated prices.  Plaintiffs and each Class member have sustained and continue to sustain substantial monetary damages and irreparable harm arising from Defendants' misconduct in that Plaintiffs and each Class member have made substantial payments to purchase lots in the VSM Subdivision that were fraudulently overvalued by Defendants.

35.   <u>Adequacy of Representation – Fed.R.Civ.P. 23(a)(4)</u>.  Plaintiffs are adequate representatives of the Class because they are members of the Class and their interests do not conflict with the interests of the members of the Class they seek to represent.  Plaintiffs have retained as counsel a Florida law firm with longstanding experience in complex and class action litigation.  Plaintiffs intend to prosecute this action vigorously, to conclusion, for the benefit of the Class.  The interests of the members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

36.   <u>Superiority – Fed.R.Civ.P. 23(b)(3)</u>.  A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Individual litigation of each Class member's claim is impracticable.  Individual litigation would increase the delay and expense to all parties and the court system in resolving complex legal and factual issues of the case, and would further present the potential for inconsistent or contradictory rulings and judgments.  It would be unduly burdensome on the court system if every person or entity with an

13

interest in a lot purchased in the VSM Subdivision filed and prosecuted a separate action. By contrast, the class action device presents far fewer management difficulties than multiple lawsuits, and provides the benefit of single adjudication, economies of scale, coordinated discovery and trial and comprehensive supervision by a single court.

37.    Class Certification under Fed.R.Civ.P. 23(b)(l). The various claims asserted in this action are additionally or alternatively certifiable under the provisions of Fed.R.Civ.P. 23(b)(1). The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, thus establishing incompatible standards of conduct for Defendants. This risk is enhanced in that Defendants' conduct is ongoing. Accordingly, individual actions would not settle the issue of whether Defendants' conduct "going forward" is lawful or not. Moreover, the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudication, or would substantially impair or impede the ability of such non-party Class members to protect their interests.

38.    Class Certification under Fed.R.Civ.P. 23(b)(2). The various claims asserted in this action are additionally or alternatively certifiable under the provisions of Fed.R.Civ.P. 23(b)(2) because Defendants have acted, or have refused to act, on grounds generally applicable to the Class, thereby making injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole. The Complaint seeks final injunctive and declaratory relief.

## GENERAL FACTS

39.   Upon information and belief, at all times relevant to the allegations herein, Defendant GINN-LA WEST END was engaged in the development and the sale of lots in the VSM Subdivision.

40.   Upon information and belief, Defendant GINN-LA WEST END did enter into contracts for the sales of lots in the VSM Subdivision at least as early as 2005 (the "Initial VSM Lot Contracts").

41.   Upon information and belief, at the time when Defendant GINN-LA WEST END did enter into the Initial VSM Lot Contracts, the prospective purchasers under those contracts were advised that if they were interested in obtaining financing for their lot purchases, they should seek financing from certain Bahamian banks recommended by Defendant GINN-LA WEST END, or from any U.S. financial institutions that might be willing to offer financing on a lot purchase in the Bahamas.

42.   Upon information and belief, the prospective purchasers under the Initial VSM Lot Contracts were unable to obtain financing for their lot purchases from U.S. financial institutions.

43.   Upon information and belief, the prospective purchasers under the Initial VSM Lot Contracts were unable to obtain financing for their lot purchases from Bahamian banks unless those purchasers were willing and able to make a 50% deposit on their lot purchases.

44.   Upon information and belief, one or more of the prospective purchasers under the Initial VSM Lot Contracts did inform Defendant GINN-LA WEST END that they would be unable to close on their VSM lot purchases unless they could obtain 80%  loan-to-value financing on their lot purchases.  Upon further information and belief, one or more of Defendants GINN-LA WEST

15

END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did recognize that unless they were able to provide prospective purchasers with 80% loan-to-value financing for VSM lot purchases, many prospective purchasers would not close on their VSM lot purchases.

45.   Upon information and belief, one or more of Defendants GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did enter into an agreement to create Defendant GINN FINANCIAL in order to provide 80% loan-to-value financing for VSM lot purchases.  Upon further information and belief, Defendant GINN FINANCIAL was formed in June, 2005 and did become a licensed mortgage lender in the State of Florida on October 4, 2005.

46.   Upon information and belief, one or more of Defendants GINN FINANCIAL, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did take steps to allow Defendant GINN FINANCIAL to offer 80% loan-to-value financing for VSM lot purchases.

47.   Upon further information and belief, in order to be able to offer lot loans in the Bahamas, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did enter into an agreement with Credit Suisse or some other source, whereby Credit Suisse or some other source would provide the end-funding for lot loans in the VSM Subdivision.

48.   Upon information and belief, one or more of Defendants GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did recommend to prospective purchasers in the VSM Subdivision

16

that those purchasers could obtain 80% loan-to-value financing for VSM lot purchases through Defendant GINN FINANCIAL. Upon further information and belief, one or more of Defendants GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did create and utilize marketing communications naming Defendant GINN FINANCIAL as the preferred lender for VSM lot purchasers.

49.    Upon further information and belief, one or more of Defendants GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did create or cause to be created a website for the VSM Subdivision ("VSM Website"). The VSM Website did state that Defendant GINN FINANCIAL was "the preferred lender for Ginn buyers," with "specialized loan programs for Ginn Sur Mer." The VSM Website did further state that Ginn Financial Services' "in-house financing eliminates communications issues and expedites the closing process."

50.    The VSM Website did further state that Defendant GINN FINANCIAL was "a licensed mortgage lender in the State of Florida; License # L100000558788." Upon information and belief, this representation was false in that the license number listed on the VSM Website does not match the license number issued to Defendant GINN FINANCIAL by the State of Florida.

51.    Upon information and belief, one or more of Defendants GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did cause prospective VSM lot purchasers seeking financing to be directed to Defendant GINN FINANCIAL. Upon further information and belief, many VSM lot purchasers did undertake the mortgage loan application process for VSM lot loans with loan officers purporting to represent Defendant GINN FINANCIAL.

52.    Upon information and belief, Defendant GINN FINANCIAL did provide applications to VSM purchasers interested in applying for lot loans, did accept applications and supporting documentation for VSM lot loans, did order appraisals for VSM lot loans, did underwrite and approve applications for VSM lot loans, and did provide VSM lot loan applicants with federally mandated mortgage loan disclosures.

53.    Upon information and belief, Defendant GINN FINANCIAL did not actually close on any VSM lot loans with those VSM purchasers who initiated the loan application process with Defendant Ginn Financial.

54.    Upon information and belief, one or more of Defendants GINN FINANCIAL, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did cause Defendant BAHAMAS SALES to be formed in August 2006 for the purpose of closing on those VSM lot loans provided to VSM purchasers who initiated the loan application process with Defendant Ginn Financial.

55.    Plaintiffs have been unable to locate any record establishing that Defendant BAHAMAS SALES was a licensed mortgage lender, correspondent mortgage lender or mortgage broker in any state.

56.    In the course of accepting, underwriting, approving and issuing financing for VSM lot purchases, Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK had a duty to ensure that:

      a.    the loan application reflected the appropriate loan type being applied for;

b.  the property appraisal supporting the loan was accurate and was conducted in accordance with all applicable State and Federal standards required of certified appraisers;

c.  the amount of the loan was within an acceptable level of risk to the loan applicant and to potential investors in the mortgage-backed security (MBS) on the secondary market; and

d.  the application process and the loan met the standards set by applicable State and Federal laws.

57.  In the course of accepting, underwriting, approving and issuing financing for VSM lot purchases, Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK had a further duty to act in good faith and with fair dealing in any transaction, practice or course of business associated with the issuance of VSM lot loans.

58.  Plaintiffs and Class members had a right to rely and did rely on Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK to meet the duties outlined in Paragraphs 56-57.

59.  In the course of issuing VSM lot loans, Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK had a further duty to act in good faith and with fair dealing in the appraisal process for the VSM lots securing the mortgages for VSM lot loans.  In connection with this duty of good faith and fair dealing, Defendants GINN FINANCIAL,

19

BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN

DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK had a duty not to

mischaracterize or suborn mischaracterization of the appraised value of the VSM lot securing the

mortgage for any VSM lot loan. In addition Defendants JOHN DOES 1-15 had a duty to conduct and

issue appraisals in accordance with all applicable State and Federal standards required of certified

appraisers.

60.    Plaintiffs and Class members had a right to rely and did rely on Defendants GINN

FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN

DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN, COOK and JOHN DOES 1-15

to meet the duties outlined in Paragraph 59.

## Scheme to Generate False Loan Applications

61.    Upon information and belief, one or more of Defendants GINN FINANCIAL,

BAHAMAS SALES, GINNLA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT,

MASTERS, BOBBY GINN, MCCRACKEN and COOK did cause to be generated false loan

applications indicating that VSM lot loans were being made for second home purchases rather

than lot purchases in order to justify higher sales prices when those VSM lot loans were sold on

the secondary market to investors in mortgage-backed securities.

62.    Upon information and belief, one or more of Defendants GINN FINANCIAL,

BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN

DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did ensure that

VSM lot loans were approved and money disbursed at the closing of VSM lot sales,

notwithstanding their knowledge of the use of false loan applications indicating that loans for

VSM lot purchases were being made for second home purchases rather than for lot purchases.

63.   Upon information and belief, the inaccurate representations in loan applications that the VSM lot loans were loans for second home purchases instead of loans for lot purchases was information that was or should have been material to the decision whether to approve the VSM lot loans.

64.   Upon information and belief, one or more of Defendants GINN FINANCIAL and BAHAMAS SALES did sell at least some of the VSM lot loans to Capital Source International Inc.  Upon further information and belief, the VSM lot loan taken out by Plaintiffs JOSEPHSON and Webb were among the loans that were sold to Capital Source.

65.   Upon information and belief, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did receive a direct benefit from their scheme to generate false loan applications in order to justify higher sales prices when VSM lot loans were sold on the secondary market to investors in mortgage-backed securities.

66.   Upon information and belief, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did fraudulently conceal their scheme to generate false loan applications in order to justify higher sales prices when VSM lot loans were sold on the secondary market to investors in mortgage-backed securities.

### Scheme to Create False and Artificially Inflated Appraised Values for VSM Lots

67.   Upon information and belief, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN

DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did engage in the fabrication and use of fraudulently overstated appraisal for two purposes:

> a. to justify the financing of VSM lot purchases at inflated prices; and

> b. to support the artificially inflated valuation of all VSM lots.

68. Upon information and belief, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did establish sales prices for VSM lots, which sales prices were substantially higher than the actual appraised value of those lots. Upon further information and belief, those Defendants utilized the sales prices they set as the target value for subsequent appraisals of VSM lots (the "Targeted Appraisal Values").

69. Upon information and belief, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did offer substantial incentives to those buyers who purchased VSM lots for cash. Upon further information and belief, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did manipulate the closing dates for VSM lot purchases so that closings on cash sales would occur before closings for sales financed with VSM lot loans.

70. Upon information and belief, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did attempt to

influence appraisers who were solicited to provide appraisals in support of VSM lot loans ("Solicited VSM Appraisers").  Upon further information and belief, Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did encourage Solicited VSM Appraisers to provide appraisals that met the Targeted Appraisal Values for VSM lots.

71.   Upon information and belief, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did select the appraisers to provide appraisals used to support VSM lot loans ("Retained VSM Appraisers") on the basis of an expectation that the Retained Appraisers would provide appraisals that met the Targeted Appraisal Values for VSM lots.

72.   Upon information and belief, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did provide Appraisal Request forms to Solicited VSM Appraisers that included the purchase price, the requested loan amount and the Targeted Appraisal Value of the VSM lot to be appraised.

73.   Upon information and belief, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did request that Solicited VSM Appraisers provide, in advance of a final Appraisal Report, either a draft Appraisal Report or a bottom line number for the appraised value of a lot as determined by the Solicited VSM Appraiser.  Upon further information and belief, if the appraised value as reflected in the

draft Appraisal Report or as otherwise communicated by the Solicited Appraiser was below the Targeted Appraisal Value for that lot, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did refuse to permit the Solicited Appraiser to submit a final Appraisal Report reflecting the "too low" appraised value as determined by the Solicited Appraiser.

74.  Upon information and belief, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did refuse to utilize the services of at least one Solicited Appraiser that determined appraised values for VSM lots, which values were lower than the Targeted Appraisal Values.

75.  Upon information and belief, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did attempt to persuade Solicited VSM Appraisers that:

    a.  sales prices for VSM lots, evidenced by pending sales contracts or HUD statements from the closings on cash sales, should be the only factors considered in order to justify the Targeted Appraisal Values of VSM lots;

    b.  sales prices for comparable lots outside the VSM Subdivision should not be considered in order to justify the Targeted Appraisal Values of VSM lots; and

    c.  "as-is" appraisals should be issued for VSM lots, which appraisals did not make the appraised value contingent upon any further development of the VSM Subdivision than that which existed on the date of the appraisal.

76.  Upon information and belief, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did reject appraisals for VSM lots prepared by Solicited VSM Appraisers when those appraisals:

    a.  showed values that were significantly lower than the Targeted Appraisal Values for the VSM lots;

    b.  took into consideration the sales prices for comparable lots located in the Bahamas but outside of the VSM Subdivision; or

    c.  indicated that the appraised value was "subject to" the completion of certain infrastructure and future amenities in the VSM Subdivision.

77.  Upon information and belief, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did refuse to work with any Solicited VSM Appraisers that:

    a.  refused to use the sales prices for VSM lots, as evidenced by pending sales contracts or HUD statements from the closings on cash sales, as the only factors to be considered in order to justify the Targeted Appraisal Values of VSM lots;

    b.  considered the sales prices for comparable lots located in the Bahamas but outside of the VSM Subdivision; or

      c.   provided appraisals indicating that the appraised value was "subject to" the completion of certain infrastructure and future amenities in the VSM Subdivision.

78.   Upon information and belief, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINNLA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did only hire appraisers who agreed:

      a.   to use the sales prices for VSM lots, as evidenced by pending sales contracts or HUD statements from the closings on cash sales, as the only factors to be considered in order to justify the Targeted Appraisal Values of VSM lots;

      b.   not to consider the sales prices for comparable lots located in the Bahamas but outside of the VSM Subdivision; and

      c.   not to provide appraisals indicating that the appraised value was "subject to" the completion of certain infrastructure and future amenities in the VSM Subdivision.

79.   Upon information and belief, Defendants JOHN DOES 1-15 did serve as Retained VSM Appraisers and did:

      a.   accept the Targeted Appraisal Values for VSM lots – as set forth in the Appraisal Request forms or oral instructions received from one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK – as the target that the appraisals should meet;

      b.   provide appraisals using the sales prices for VSM lots, as evidenced by pending sales contracts or HUD statements from the closings on cash sales, as the only

factors to be considered in order to justify the Targeted Appraisal Values of VSM lots;

    c.  provide appraisals that did not consider the sales prices for comparable lots located in the Bahamas but outside of the VSM Subdivision; and

    d.  provide appraisals that did not indicate that the appraised value was "subject to" the completion of certain infrastructure and future amenities in the VSM Subdivision.

80.  Upon information and belief, Defendants JOHN DOES 1-15 were motivated to participate in the scheme to create false and artificially inflated appraised values for VSM lots by the prospect that they would receive additional business from one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK or from other Ginn entities.

81.  Upon information and belief, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did utilize fraudulently overstated appraisals from the Retained Appraisers (Defendants JOHN DOES 1-15) to justify the sale and financing of VSM lot purchases at the Targeted Appraisal Values and to justify the artificially inflated value of all VSM lots.

82.  Upon information and belief, one or more of Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN and COOK did ensure that VSM

lot loans were approved and money disbursed at the closing of VSM lot sales, notwithstanding their knowledge of the use of fraudulently overstated appraisals.

83.   Upon information and belief, one or more of Defendants did fraudulently conceal their scheme to utilize fraudulently overstated appraisals to create false and artificially inflated values for VSM lots.

84.   Plaintiffs did not discover Defendants' scheme to utilize fraudulently overstated appraisals to create false and artificially inflated values for VSM lots, or that Defendants had fraudulently concealed that scheme, until early June 2009.

85.   The appraised value of the VSM lots, as set forth in the fraudulently overstated appraisals, was material to the decisions of Plaintiffs and Class members whether to purchase VSM lots and how much to pay for the VSM lots they purchased.

86.   The appraised value of the VSM lots, as set forth in the fraudulently overstated appraisals, was or should have been material to the underwriting decision whether to approve the VSM lot loans.

87.   Upon information and belief, one or more of Defendants did conceal the true facts concerning their fraudulent valuation practices and concerning the true value of lots within the VSM Subdivision.

88.   One or more of Defendants did receive a direct benefit from the scheme to utilize fraudulently overstated appraisals to create false and artificially inflated values for VSM lots.

89.   But for the fraudulent scheme perpetrated by Defendants, Plaintiffs would not have purchased VSM lots or would not have purchased VSM lots at the fraudulently and artificially inflated prices.

90.  But for the fraudulent scheme perpetrated by Defendants, the VSM lot loans should not have been approved for the fraudulently and artificially inflated sales prices of the VSM lots.

91.  Plaintiffs and the Class were damaged by Defendants scheme to utilize fraudulently overstated appraisals to create false and artificially inflated values for VSM lots.  Plaintiffs damages result, in part, from the fact that the fraudulently overstated appraisals render the VSM lots, as well as an mortgages loans on those lots, entirely unmarketable.

## RICO Allegations

### The Ginn Financial Enterprise

92.  Plaintiffs, members of the Class and Defendants are all "persons" within the meaning of 18 U.S.C. § 1961(3).

93.  Based upon Plaintiffs' current knowledge, the following persons constitute a group of individuals associated in fact that Plaintiffs refer to as the "Ginn Financial Enterprise": (1) Defendant GINN FINANCIAL; (2) Defendant BAHAMAS SALES; (3) Defendant GINN-LA WEST END; (4) Defendant THE GINN COMPANIES; (5) Defendant GINN DEVELOPMENT; (6) Defendant MASTERS; (7) Defendant BOBBY GINN; (8) Defendant MCCRACKEN; (9) Defendant COOK; (10) Defendants JOHN DOES 1-15; and (11) other subsidiaries, agents and affiliated persons or entities of Defendants presently unknown to Plaintiffs.

94.  The Ginn Financial Enterprise is an ongoing organization that engages in, and which activities affect, interstate and foreign commerce.  At all time relevant to the allegations herein, Defendants GINN FINANCIAL, BAHAMAS SALES, GINN-LA WEST END, THE GINN COMPANIES, GINN DEVELOPMENT, MASTERS, BOBBY GINN, MCCRACKEN, COOK and JOHN DOES 1-15 did knowingly and willfully make use of the means and instruments of

transportation and communications of interstate and foreign commerce to communicate with one another, with prospective purchasers of lots in the VSM Subdivision and with applicants for VSM lot financing.

95.   Although Defendants participate in and are members and part of the Ginn Financial Enterprise, each Defendant also has an existence separate and apart from the Ginn Financial Enterprise.

96.   At all relevant times, the Ginn Financial Enterprise has had an ascertainable structure separate and apart from the pattern of racketeering activity in which Defendants have engaged and their conspiracy to engage in such activity.  The primary decision-maker for the Ginn Financial Enterprise was and is Defendant BOBBY GINN, who directed and continues to direct the activities of the Ginn Financial Enterprise.

97.   Defendants control and operate the Ginn Enterprise through a variety of means including, but not limited to, the following:

    a.   by investing funds to develop the VSM Subdivision;

    b.   by investing funds to develop the VSM Subdivision;

    c.   by agreeing to create and creating Defendants GINN FINANCIAL and
         BAHAMAS SALES ASSOCIATE in order to offer prospective purchasers VSM
         lot loans;

    d.   by agreeing to generate and generating false loan applications;

    e.   by agreeing to set and setting artificially high sales prices for VSM lots;

    f.   by agreeing to generate and generating fraudulently overstated appraisals intended to
         support VSM lot loans issued by Defendants GINN FINANCIAL and/or
         BAHAMAS SALES ASSOCIATE;

30

g.  by agreeing to facilitate and facilitating the approval and closing of VSM lot loans at amounts that are based upon the fraudulently overstated appraised value of VSM lots;

h.  by agreeing to conceal and concealing their fraudulent scheme to generate false loan applications in order to sell VSM lot loans as mortgage-backed securities;

i.  by agreeing to conceal and concealing their fraudulent scheme to set artificially high sales prices for VSM lots;

j.  by agreeing to conceal and concealing their fraudulent scheme to facilitate the approval and closing of VSM lot loans at amounts that are based upon the fraudulently overstated appraised value of VSM lots; and

k.  by agreeing to conceal and concealing their fraudulent scheme to generate fraudulently overstated appraisals intended to support VSM lot loans issued by Defendants GINN FINANCIAL and/or BAHAMAS SALES ASSOCIATE.

98.  The Ginn Financial Enterprise has pursued a course of deceit, misrepresentation, concealment and conspiracy to defraud VSM lot purchasers and to collect profits from the fraudulent, misleading and unlawful actions of the Ginn Financial Enterprise. Those actions continue to the present and threaten to continue into the future.

99.  The formation, existence and actions of the Ginn Financial Enterprise were and are essential to the success of its fraudulent, misleading and unlawful actions.

### Predicate Acts

### Mail and Wire Fraud

100.    Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud). Defendants have engaged and continue to engage in conduct violating each of these laws in an effort to effectuate their scheme.

101.    For the purpose of executing and/or attempting to execute the above-described scheme to defraud or obtain money by means of false or fraudulent pretenses, representations or promises, Defendants in violation of 18 U.S.C. § 1341 did cause matter and things to be delivered by the Postal Service or by private or commercial interstate carriers. These acts were done intentionally and knowingly with the specific intent to advance Defendants' schemes, or with knowledge that the use of mails would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended.

102.    Defendants carried out their scheme in different states within the United States and in other countries and could not have done so unless they used the Postal Service or private or commercial interstate carriers.

103.    For the purpose of executing and/or attempting to execute the above-described scheme to defraud or obtain money by means of false or fraudulent pretenses, representations or promises, Defendants in violation of 18 U.S.C. § 1343 did transmit, cause to be transmitted and/or received by means of wire communication in interstate and foreign commerce, various writings, signs, and signals. These acts were done intentionally and knowingly with

the specific intent to advance Defendants' scheme, or with knowledge that the use of wire communications would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended.

104.     The matter and things sent by Defendants via the Postal Service or private or commercial carrier, wire or other interstate media include, but are not limited to, the following:

  a.   correspondence conveying loan applications generated by Defendants;

  b.   correspondence conveying financing documents representing that the financing for VSM lots was supported by an appraisal;

  c.   correspondence and financing documents that failed to disclose Defendants' scheme to generate false loan applications in order to sell VSM lot loans as mortgage-backed securities;

  d.   correspondence and financing documents that failed to disclose Defendants' scheme to set artificially high sales prices for VSM lots; and

  e.   correspondence and financing documents that failed to disclose Defendants' scheme to generate fraudulently overstated appraisals intended to support VSM lot loans issued by Defendants GINN FINANCIAL and/or BAHAMAS SALES ASSOCIATE.

102.   Other matters and things sent through or received from the Postal Service and private or commercial carrier or interstate wire transmission by Defendants included information or communication in furtherance of or necessary to effectuate the schemes outlined above.

103.   Defendants' misrepresentations, acts of concealment and failures to disclose were knowing and intentional and made for the purpose of deceiving Plaintiffs and the Class and obtaining their money and property for Defendants' gain.

104.   Defendants either knew or recklessly disregarded the fact that the misrepresentations and omissions described above were material, and Plaintiffs and the Class relied on the misrepresentations and omissions set forth above.

105.      As a result of Defendants' fraudulent schemes, Defendants have obtained money and property belonging to Plaintiffs and Class members, and Plaintiffs and Class members have been injured in their business or property by the Defendants' overt acts of mail and wire fraud.

## **Pattern of Racketeering Activity**

106.      Defendants did knowingly, willfully and unlawfully conduct or participate in the affairs of the Ginn Financial Enterprise through a "pattern of racketeering activity," within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c). The racketeering activity was made possible by the Defendants' regular and repeated use of the facilities and services of the Ginn Financial Enterprise.

107.      Defendants committed or aided and abetted in the commission of at least two acts of racketeering activity, i.e., indictable violations of 18 U.S.C. §§1341 and 1343 as described above, within the past five years ("Racketeering Acts").  Defendants' Racketeering Acts were not isolated, but rather had the same or similar purpose, participants, method of commission, and victims, including Plaintiffs and Class members.  Each of the Racketeering Acts were committed pursuant to and in furtherance of the Ginn Financial Enterprise, and such acts include false and

misleading statements, as well as other uses of the mails and wire transmissions, to further and execute Defendants' scheme and artifice to defraud.

108.    The multiple Racketeering Acts that Defendants committed and/or conspired to commit and/or aided and abetted the commission of, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

## COUNT I

### Violation of 18 U.S.C. § 1962(c):  RICO

109.    Plaintiffs re-allege the allegations set forth in paragraphs 1- 108 as though fully **set** forth below.

110.    Defendants violated 18 U.S.C. §§ 1962(c) by conducting, or participating directly or indirectly in the conduct of the affairs of the Ginn Financial Enterprise through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §§134l and 1343.

111.    As a direct and proximate result, Plaintiffs and members of the Class have been injured in their business or property by the predicate acts that make up Defendants' pattern of racketeering activity through the Ginn Financial Enterprise.

## COUNT II

### Violation of 18 U.S.C. § 1962(d): RICO

112.    Plaintiffs re-allege the allegations set forth in paragraphs 1- 111 as though fully set forth below.

113.    In violation of 18 U.S.C. § 1962(d) Defendants have, as set forth above, conspired to violate 18 U.S.C. § 1962(c).  The conspiracy commenced at least as early as 2004

and continues.  The object of the conspiracy was to sell and finance VSM lots at inflated prices resulting in increased profits for Defendants.

114.     As set forth above, each Defendant knowingly, willfully and unlawfully agreed and combined to conduct or participate in, directly or indirectly, the conduct of the affairs and activities of the Ginn Financial Enterprise through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §§1341 and 1343, in violation of 18 U.S.C. § 1962(c).

115.     Defendants committed numerous overt acts of racketeering activity or other wrongful activity in furtherance of said conspiracy.

116.     The purpose of the acts that caused injury to Plaintiffs and Class members was to advance the overall objective of the conspiracy, and the harm to Plaintiffs and Class members was a reasonably foreseeable consequence of Defendants' schemes.

117.     As a direct and proximate result, Plaintiffs and Class members have been injured in their business or property by Defendants' conspiracy and by the predicate acts that make up the Defendants' pattern of racketeering activity through the Ginn Financial Enterprise.

## COUNT III

### Unjust Enrichment

118.     Plaintiffs re-allege the allegations set forth in paragraphs 1- 117 as though fully set forth below.

119.     As a result of their schemes as alleged herein, Defendants sold and/or financed VSM lots to Plaintiffs and Class members at inflated prices and benefitted thereby through the receipt of money and fees that were artificially inflated.

120.     Defendants are aware of their receipt of these benefits.

36

121.     Defendants received these benefits to the detriment of Plaintiffs and Class members.

122.     Defendants' continuing retention of these benefits, to the detriment of Plaintiffs and Class members, is inequitable.

123.     By virtue of Defendants' unjust enrichment, Plaintiffs and Class members have sustained damages in an amount to be determined at trial.

124.     Plaintiffs and Class members hereby seek full restitution and disgorgement of Defendants' inequitable enrichment, benefits and ill-gotten gains acquired as a result of the wrongful conduct set forth above.

125.     Plaintiffs and Class members further seek restitution and disgorgement of all profits realized by Defendants as a result of the wrongful conduct set forth above.

## **PRAYER FOR RELIEF**

**Plaintiffs and Class members hereby pray for the following relief:**

A.   A determination that this case may proceed as a class action, certification of the Class of all purchasers of lots within the VSM Subdivision, certification of Plaintiffs as Class representatives and designation of Plaintiffs' counsel as Class counsel under Fed.R.Civ. Proc. 23;

B.  A determination that Defendants have violated 18 U.S.C. §§ 1962(c) and (d);

C.  An injunction prohibiting Defendants from further violations of 18 U.S.C. §§ 1962(c) and (d);

D.  A determination that the mortgages entered into by Plaintiffs and members of the

Class should be declared null and void as a consequence of Defendants' fraudulent actions;

E.  As to all counts, an order that Defendants pay damages in an amount to be determined at trial;

F.  As to counts I and II, an order that Defendants pay treble the amount of damages suffered by Plaintiffs and Class members;

G.  A determination that Defendants have been unjustly enriched at the expense of Plaintiffs and the Class members;

H.  An order of restitution of all payments and charges that Defendants improperly collected from Plaintiffs and the Class members;

I.  The imposition of a constructive trust over the amount of all payments and charges that Defendants improperly collected from Plaintiffs and the Class members;

J.  A determination that Defendants are jointly and severally liable as to all Counts herein;

K.  An award to Plaintiffs and Class members of the costs and disbursements incurred in connection will this action, including reasonable attorneys' fees and the reimbursement of expenses in amounts to be determined by the Court;

L.  An award to Plaintiffs and Class members of prejudgment interest;

M.  Trial by Jury of all issues triable as of right by a jury; and

N.  Such other and, further relief as the Court may deem just and proper.

July 20, 2009                              s/ Dana L. Ballinger

                              Dana L. Ballinger – Trial Counsel

                              Attorney for Plaintiffs

                              Florida Bar No. 35278

                              BALLINGER LAW OFFICE
                              747 Windlass Way
                              Sanibel, Florida 33957
                              (239) 395-7672
                              dballinger@ballingerlawoffice.com